# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

BRADLEY BRAXTON and all others similarly situated,

      Plaintiffs,

v.

CITY OF DENVER, COLORADO;
DENVER SHERIFFS DEPARTMENT;
MAYOR JOHN W. HICKENLOOPER, in his official capacity;
SERGEANT RONALD RODRIGUEZ, in his individual and official capacity;
MAJOR ELIAS DIGGANS, in his individual and official capacity;
FOUR UNKNOWN DENVER DEPUTY SHERIFFS, in their individual and official capacity;

      Defendants.

---

## VERIFIED COMPLAINT

---

Plaintiff Bradley Braxton, by and through his attorneys, J. Scott Bertram and Gregory C. Graf of the law firm Bertram & Graf, LLC, respectfully alleges for his Complaint as follows:

## INTRODUCTION

1.    This is an action for damages against the City of Denver, the Denver Sheriffs Office, Mayor John W. Hickenlooper, Sergeant Ronald Rodriguez, Major Elias Diggans and Four Unknown Denver Sheriffs Deputies for wanton and willful false imprisonment, false imprisonment by failure to release, and malicious prosecution of Plaintiff Bradley Braxton.  Mr. Braxton alleges the Defendants wrongfully detained and imprisoned Mr. Braxton.  Further, the Defendants willfully, intentionally, knowingly, recklessly, and in direct violation of the United States Constitution and Colorado Statutes and the Colorado Rules of Criminal Procedure, failed to bring Mr. Braxton before a judicial officer wherein it would have been determined that Mr.

Braxton was wrongfully detained.  Defendants' conduct under color of state law proximately caused the deprivation of Mr. Braxton's federally protected rights. It is further alleged that the actions complained of herein are the custom, practice and policy of the City and County of Denver and Denver's Sheriffs Department.

2.    Upon information and belief, many other arrestees are subjected to similarly unlawful treatment at the hands of the City of Denver and the Denver Sheriffs Department.  It is the intention of undersigned counsel to obtain discovery regarding the possibility of many others similarly situated in order to determine if a class action is warranted in this matter.

## JURISDICTION & VENUE

3.    This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and 42 U.S.C. § 1983.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Jurisdiction supporting Mr. Braxton's claim for attorney fees is conferred by 42 U.S.C. § 1988.

4.    Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All of the events alleged herein occurred within the state of Colorado, and all of the parties are residents of the state.

## PARTIES

5.    The Plaintiff Bradley Braxton is a thirty-six year old black male, who is a natural citizen of the United States of America and a resident of Aurora, Colorado.

6.    The City of Denver is an incorporated municipality under the laws of the State of Colorado, with principal offices located at the Denver City and County Building, 1437 Bannock Street, Denver, Colorado, 80202.

7.   The Denver Sheriffs Department is a division of the City of Denver with law enforcement responsibilities that include but are not limited to management of prisoners held at the Denver County Jail located at 10500 East Smith Road, Denver, Colorado, 80239 and the Denver Pre-Arraignment Detention Facility, also known as the "City Jail," located at 1531 Cherokee Street, Denver, Colorado, 80204.

8.   The Defendant John W. Hickenlooper is Mayor of the City of Denver and is responsible for oversight and management of the Denver Sheriffs Department, the Denver Department of Safety and the various Denver detention facilities and as such was responsible for insuring the Constitutional rights of prisoners held by the City of Denver are not violated.  Mayor Hickenlooper was at all times relevant acting within the scope of his duties and employment, under color and authority of state law.

9.   Defendant Ronald Rodriguez is a Sergeant working for the Denver Sheriffs Department at the Denver County Jail and as such was responsible for insuring the Constitutional rights of prisoners at the Denver County Jail were not violated and that federal and state laws relating to the treatment of prisoners were upheld and maintained.  Sgt. Rodriguez was at all times relevant acting under color and authority of state law.

10.  Defendant Elias Diggans, is a Major working for the Denver Sheriffs Department at the Denver County Jail and as such was responsible for insuring the Constitutional rights of prisoners at the Denver County Jail were not violated and that federal and state laws relating to the treatment of prisoners were upheld and maintained.  Maj. Diggans was at all times relevant acting under color and authority of state law.

11.  Four Unknown Denver Deputy Sheriffs worked at the Denver County Jail release area and as such were responsible for insuring the Constitutional rights of prisoners at the Denver

County Jail were not violated and that federal and state laws relating to the treatment of prisoners were upheld and maintained.  The Four Unknown Denver Deputy Sheriffs were at all times relevant acting under color and authority of state law.  One of the Four Unknown Denver Deputy Sheriffs, was referred to by the other Deputy Sheriffs as "Captain."

## FACTUAL BACKGROUND

12.   On Thursday July 19, 2007 Mr. Braxton was in Denver County Court, General Sessions Division for a traffic offense when he was arrested by Denver County Sheriffs for a ten-year-old warrant in Denver General Sessions case 95GS783993.

13.   The Denver Sheriffs transported Mr. Braxton across the street to the Denver City jail.

14.   Mr. Braxton attempted to post bond in case number 95GS783993, but was told by a Denver Deputy Sheriff that he was also being held without eligibility for bond in Denver District case number 07CR3595.

15.   Mr. Braxton contacted his supervisor at the Denver City Jail requesting that he be taken to Court for an initial advisement in Denver General Sessions case 95GS783993 and Denver District case 07CR3595.  His requests were refused.

16.   The Colorado Rules of Criminal Procedure and the due process clause of the United States Constitution required that Mr. Braxton be taken before the first available judicial officer for an advisement of his constitutional rights and consideration of bond.

17.   The Denver Sheriffs Department failed to take Mr. Braxton before any judicial officer on Thursday July 20, 2007 or Friday July 21, 2007.  Instead, Mr. Braxton was left in the Denver City Jail over the weekend until the following Monday July 23, 2007.

18.   On Monday July 23, 2007, Mr. Braxton was taken to the Denver General Sessions Court where it was discovered that the warrant from case 95GS783993 was a mistake.   Case 95GS783993 was then dismissed.

19.   Again, rather than taking Mr. Braxton to the District Court for an advisement of rights in case number 07CR3595, he was transported to the Denver County Jail and held without bond.

20.   While imprisoned in the Denver County Jail without bond, Mr. Braxton called the Clerk of Denver District Court Division 10 and learned the defendant in case 07CR3595 was David Eddie. David Eddie is a white male; Mr. Braxton is a black male.

21.   Mr. Braxton did not know the defendant David Eddie in case 07CR3595.

22.   Mr. Braxton was not a co-defendant in case 07CR3595.

23.   Mr. Braxton was not a witness in case 07CR3595.

24.   Mr. Braxton was never a suspect in case 07CR3595.

25.   The Denver Sheriffs Office failed to check the name or identity of the defendant from case number 07CR3595 to determine if Mr. Braxton was properly held.

26.   Mr. Braxton contacted his supervisor at the Denver County Jail on numerous occasions indicating that he was not the defendant in the case 07CR3595 and that he was being improperly held and requested that he be taken to Court for his rights advisement so that his misidentification as the defendant in 07CR3595 would be discovered.

27.   On July 25, 2007, after being held for seven days without seeing a judicial officer for case number 07CR3595, Mr. Braxton wrote an "Inmate Message Form" delivered to the Defendants Sgt. Rodriquez and Maj. Diggans and informed them that he was not the person charged in the case. [Exhibit 1]

28.  On July 26, 2007 Sgt. Rodriquez wrote to Mr. Braxton that if the Courts were aware that Mr. Braxton was not the person charged in the case "They will drop the charges." [Exhibit 1]

29.  Sgt. Rodriquez and Maj. Diggans made no efforts to check the identity of the defendant in case number 07CR3595 (a white male) nor did they make any effort to insure that Mr. Braxton was taken to Court for a rights advisement.

30.  The Denver County Jail Staff failed to take Mr. Braxton to Court for an advisement of his rights wherein a judicial officer could have determined that he was not a white male and not the defendant in case number 07CR3595.

31.  Denver District case number 07CR3595 was set for a hearing on July 26, 2007.  The Denver Sheriffs Office failed to take Mr. Braxton to Court for that hearing.

32.  On July 26, 2007, Mr. Braxton wrote an inmate grievance form to the Denver Sheriff Department. [Exhibit 2]

33.  Mr. Braxton was not taken to a judicial officer for case 07CR3595 despite being held for nine days.

34.  Mr. Braxton was brought to the release area of the Denver County Jail where Four Unknown Denver Deputy Sheriffs laughed at Mr. Braxton and commented, "Captain, he doesn't look like a white guy to me."

35.  Mr. Braxton was detained in the Denver County Jail release area for an extended period of time while the Four Unknown Denver Deputy Sheriff's made fun of his predicament.

36.  Mr. Braxton remained in the Denver County Jail release and was subjected to humiliating jokes concerning his detention.

37.  On Friday July 27, 2007, after spending nine days in jail for a case in which he was not the defendant, Mr. Braxton was released.

38.  Upon information and belief, Mayor Hickenlooper was aware or should have been aware of similar complaints concerning the failure of the Denver Sheriffs Department to take prisoners detained on arrest warrants before the first available judicial officer, but has failed to take action to remedy this constitutional violation.

39.  Upon information and belief, it is common for prisoners held by the Denver Sheriffs Department to remain in detention for several days before being brought before a judicial officer for a rights advisement.

40.  Upon information and belief, African-Americans held at the detention facilities managed by the Denver Sheriffs Department are far more likely not to be brought before judicial officers in an expeditious manner after their arrest as compared with white prisoners.

## FIRST CLAIM FOR RELIEF
(42 U.S.C. §1983)

41.  Mr. Braxton hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

42.  The actions of Defendants as described herein, while acting under color of state law, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including his right to freedom from unlawful and unreasonable seizures as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. §1983, in that the Defendants wrongfully detained the Plaintiff without probable cause and denied him due process in direct violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Colorado state law *Colo.Rev.Stat*. §18-3-303 and *Colo.R.Crim.P*. 5(a)(1), which states in relevant part:

Procedure Following Arrest.  If a peace officer or any other person makes an arrest, either with or without a warrant, the arrested person shall be taken without unnecessary delay before the nearest available county or district court.  Thereafter, a felony complaint, information, or

indictment shall be filed, if it has not already been filed, without unnecessary delay in the proper court and a copy thereof given to the defendant.

43.  The City of Denver and Sgt. Rodriguez and Maj. Diggans intentionally, knowingly, recklessly willfully and wantonly wrongfully imprisoned Mr. Braxton, seizing his person after knowing Mr. Braxton's name and race did not match the details on the warrant that was holding him, ignoring his complaints, and not taking him before the first available judicial officer.

44.  Mayor Hickenlooper, through his official policy, custom and practice did through inadequate and improper training, create and maintain a Sheriffs department with officers so lacking in fundamental training in proper procedures that such officers would intentionally, knowing, recklessly willfully and wantonly violate state statutory guidelines defining police misconduct, and did there manifest custom practice and policy that allowed Mr. Braxton to be subjected to a demeaning, illegal and unconstitutional seizure of his person.

45.  The defendants' failure to bring Mr. Braxton without delay before the first available judicial officer was based in part because Mr. Braxton was an African-American.

46.  As the direct and proximate consequence of the defendants' actions and omissions in violation of the United States Constitution, Braxton incurred damages and losses including lost wages, emotional and psychological trauma, and he has suffered great personal indignity in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
(False Imprisonment or Arrest)

47.  Mr. Braxton hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

48.  The Denver Sheriffs Department intentionally, knowingly, recklessly, willfully and wantonly falsely imprisoned Mr. Braxton, seizing his person after knowing Mr. Braxton's name

and race did not match the details on the warrant that was holding him, ignoring his complaints, and not taking him before the first available judicial officer.

49.   The City of Denver and Sgt. Rodriguez and Maj. Diggans intentionally, knowingly, recklessly, willfully and wantonly falsely imprisoned Braxton, seizing his person after knowing Braxton's name and race did not match the details on the warrant that was holding him, ignoring his complaints, and not taking him before the first available judicial officer.

50.   Defendants imprisoned Mr. Braxton long after it was clear no probable cause for an arrest or continued detention was present.

51.   Mr. Braxton was aware that his freedom was restricted and corresponded with the Defendants by filing official complaints.

52.   The Defendants ignored complaints and intentionally, knowingly, recklessly, willfully and wantonly wrongfully imprisoned Mr. Braxton, seizing his person after knowing Mr. Braxton's name and race did not match the details on the warrant that was holding him, and not taking him before the first available judicial officer.

53.   Mr. Braxton's freedom of movement would not have been restricted if Defendants did not ignore his complaints or if they had taken him before the first available judicial officer in accord with *Colo.R. Crim.P.* 5(a)(1).

54.   As the direct and proximate consequence of the defendants' actions and omissions in violation of the United States Constitution, Braxton incurred damages and losses including lost wages, emotional and psychological trauma, and he has suffered great personal indignity in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
(Intent to Restrict by Failure to Release)

55.  Mr. Braxton hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

56.  Defendants intentionally, knowingly, recklessly, willfully and wantonly falsely imprisoned Braxton, seizing his person after knowing Mr. Braxton's name and race did not match the details on the warrant that was holding him, ignoring his complaints, and not taking him before the first available judicial officer.

57.  Defendants were aware that Mr. Braxton was incarcerated and therefore confined to fixed physical boundaries.

58.  Defendants were under a legal duty to bring Mr. Braxton without delay before a judicial officer as required by the Fourth and Fourteenth Amendments to the Constitution of the United States of America and *Colo.R. Crim.P.* 5(a)(1).

59.  Defendants intentionally, knowingly, recklessly and willfully failed to release Braxton after probable cause ceased and failed to take him before the first available judicial officer in accord with the Fourth and Fourteenth Amendments to the Constitution of the United States of America and *Colo.R. Crim.P.* 5(a)(1).

60.  As the direct and proximate consequence of the defendants' actions and omissions in violation of the United States Constitution, Braxton incurred damages and losses including lost wages, emotional and psychological trauma, and he has suffered great personal indignity in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

(Malicious Prosecution Arising Out of a Criminal Case and Abuse of Process)

61.  Mr. Braxton hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

62.  Mr. Braxton was arrested and transported to the Denver County jail based on a no bond hold in Denver District case 07CR3595.

63.  Mr. Braxton spent nine days in jail for a case in which he was not the defendant.

64.  Defendants imprisoned Mr. Braxton long after it was clear no probable cause for an arrest was present.

65.  The City of Denver and Sgt. Rodriguez and Maj. Diggans intentionally, knowingly, recklessly, willfully and wantonly falsely imprisoned Mr. Braxton, seizing his person after knowing Mr. Braxton name and race did not match the details on the warrant that was holding him, ignoring his complaints, and not taking him before the first available judicial officer.

66.  Mr. Braxton was brought to the release area of the Denver County Jail where Four Unknown Deputy Sheriffs humiliated him making statements such as "he doesn't look like a white guy to me."

67.  As the direct and proximate consequence of these defendants' actions and omissions in violation of the United States Constitution, Braxton incurred damages and losses including lost wages, emotional and psychological trauma, and he has suffered great personal indignity in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
(Negligence)

68.   Mr. Braxton hereby incorporates all other paragraphs of this Complaint as if fully set

forth herein.

69.   The Defendants owed a duty to Mr. Braxton to insure that his detention was proper and

that as a black male, he was not being detained for charges in a case in which the defendant was

a white-male with a different name.   Further, the Defendants had a duty to insure that Mr.

Braxton was taken before the first available judicial officer so he could be advised of the charges

and his constitutional rights.

70.   The Defendants' failure to insure that Mr. Braxton's detention was proper and that he

was the actual defendant in Denver District case number 07CR3595 and the failure of the

Defendants to take Mr. Braxton before the first available judicial officer constitutes negligence.

71.   As a result of the Defendants' negligence, Mr. Braxton suffered actual and consequential

damages incurred including but not limited to lost wages, emotional and psychological trauma,

the loss of personal indignity in an amount to be proven at trial.

WHEREFORE, Plaintiff Bradley Braxton respectfully requests that this Court enter judgment

in his favor and against the Defendants, and grant:

(a)      Appropriate declaratory and other injunctive and/or equitable relief;

(b)      Compensatory and consequential damages, including damages for emotional

distress, loss of reputation, humiliation, degradation, fear, loss of enjoyment of life, and other

pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c)      All economic losses on all claims allowed by law;

(d)      Punitive damages on all claims allowed by law and in an amount to be determined

at trial;

(e)     Attorneys fees and the costs associated with this action, as well as expert witness

fees, on all claims allowed by law;

(f)     Pre- and post-judgment interest at the lawful rate.

(g)     Any further relief that this court deems just and proper, and any other relief as

allowed by law.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE

Dated this 25 day of October, 2007,


Respectfully submitted,


**BERTRAM & GRAF, LLC**


*/s/Gregory C. Graf*
*Original Signature on File*

By:_____
Gregory C. Graf (#13248)
8400 E. Prentice Ave., Penthouse Suite
Greenwood Village, Colorado 80111
Telephone:  (303) 409-7711
Fax:(303) 409-7714
Email:gcgraf@graf-law.com
**Attorneys for Plaintiff**

**Plaintiffs Address:**

Brad Braxton
1785 Cathay Court
Aurora, Colorado 80011

I, BRADLEY BRAXTON being first duly sworn, declare under penalty of perjury that I have read the foregoing Verified Complaint, and the statements contained therein are true and correct to best of my knowledge and belief.

*/s/Bradley Braxton*
*Original Signature on File*

_____
BRADLEY BRAXTON, Plaintiff

STATE OF COLORADO                    )
                                     ) ss.
COUNTY OF ARAPAHOE                   )

The foregoing instrument was acknowledged before me by BRADLEY BRAXTON this 25th day of October 2007.

My commission expires.  4/22/2009

Witness my hand and official seal.

*/s/Brandy Christner*
*Original Signature on File*
_____

[ S E A L ]                          8400 E. Prentice Ave., Suite 1500
                                     Greenwood Village, Colorado 80111